UNITED STATES DISTRICT COURT
DISTRICT OF NEW MEXICO

EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION,

    Plaintiff,

v.                                                          Civ. No. 23-274 MV/GJF

SANDIA TRANSPORTATION, L.L.C.,

    Defendant.

**PROPOSED FINDINGS AND RECOMMENDED DISPOSITION
(PFRD) ON DEFENDANT'S MOTION TO SET ASIDE DEFAULT**

THIS MATTER is before the Court on Defendant's Motion to Set Aside Default [ECF 12] ("Motion"). The Motion is fully briefed. *See* ECFs 12 ("Mot."), 13 ("Resp.").[1] As discussed below, the Court finds good cause to set aside the clerk's entry of default. The Court therefore recommends granting the Motion.[2]

## I.   BACKGROUND

### A.  Plaintiff's Complaint

On March 31, 2023, Plaintiff filed its Complaint, alleging that Defendant, "a non-emergency medical transportation company" in Albuquerque, "subjected [four female employees] to [an] unwelcome severe or pervasive hostile work environment on the basis of their sex and/or sexual orientation." Compl. [ECF 1] at 1, 3. Defendant's sole owner, Faridoun Veriyani, allegedly fired these women because he disliked "[their] sexual orientation and/or" because of his

---

[1] Defendant did not file a reply.

[2] The Court files this PFRD pursuant to the presiding judge's Order of Reference. ECF 15.

"expectations of female employees."  *Id.* at 1–2.[3]  The Complaint contains two counts: Discrimination Based on Sex (42 U.S.C. § 2000e-2(a)) and Record-Keeping Violation (§ 2000e-8(c)).  *Id.* at 3–10.  The relief requested includes, *inter alia*, (1) a permanent injunction; (2) an order to "provide equal employment opportunities for women and lesbian employees" and to "make and preserve all [applicable] records"; (3) "compensation for past and future pecuniary and nonpecuniary losses"; and (4) "punitive damages pursuant to 42 U.S.C. § 1981a for [Defendant's] malicious and reckless conduct."  *Id.* at 10–11.

### B. Entry of Default

Plaintiff formally served the Complaint and summons on Defendant on May 9, 2023.  ECF 8.  Thus, Defendant was required to answer or otherwise respond to the Complaint by May 30, 2023.  Fed. R. Civ. P. 12(a)(1)(A)(i).  Although Veriyani acknowledged being served on May 9th, he did not file anything (or otherwise communicate with Plaintiff) before the May 30th deadline.  Mot. at ¶ 1; ECF 12-1 at ¶ 7; Resp. at 6, 8.  In explaining this failure, Veriyani now states that he was "confused by the service [of the Complaint and summons] as his [previous] attorney, Stephen Royce, had indicated that the EEOC [Equal Employment Opportunity Commission] matter was finished."  Mot. at ¶ 2.[4]

On June 5, 2023, Plaintiff "email[ed] a draft copy of EEOC's Motion for Default Judgment" directly to Veriyani, seeking Defendant's position.  Resp. at ¶ 1; Mot. at ¶ 3.  Because

---

[3] *See*, *e.g.*, Compl. at ¶¶ 12–45 (alleging numerous inappropriate statements by Veriyani, such as "I hate fuckin' dealing with women!"; "Women like you [lesbian] would be killed in my country [Iran]"; "[W]omen shouldn't be working [outside the home]"; "All the lesbians are fired! Get the "fuck out of my business!").

[4] Veriyani also claims that "[t]he [a]ttorneys retained to represent [him] during the proceedings of the investigation were of very minimal assistance."  Mot. at ¶ 2.  For instance, Veriyani states that his first attorney "[w]as not aware of the EEOC process and was not able to represent [him] during the course of the investigation" and that his second attorney, Mr. Royce, only "represented [him] in part with the EEOC"—and had "no effective communication with [the] EEOC" during the investigation.  ECF 12-1 at ¶ 3; *see also* ECF 9 at ¶ 8 (Plaintiff acknowledging that Defendant "was not represented by counsel at the end of the investigation" and representing that Plaintiff did not know whether Defendant was represented when Plaintiff filed the instant lawsuit and sought default).

Veriyani "is not educated in the legal field," he was not "aware that he could request an extension of time in which to respond to the complaint filed against him." *Id.* As a result, "he simply objected to the Motion for Default" by return email on June 6, 2023. *Id.*; Resp. at ¶ 1. Upon receiving his email, Plaintiff filed its Motion for Default that same day, and the Clerk entered an Order of Default the following day, June 7, 2023. *Id.* at ¶¶ 2–3; ECFs 9, 10. No default judgment has been entered in this case.

### C. Defendant's Motion

Veriyani eventually "contacted an acquaintance who is an attorney" to ask for assistance. ECF 12-1 at ¶ 7. On June 21, 2023, Veriyani's current attorney entered his appearance and filed the instant Motion, requesting that the Court "rescind the Clerk's Entry of Default" so that Defendant may "submit [its] answer to the complaint and proceed." Mot. at 1–2; *see also* ECF 12-2 (Defendant's proposed answer).

## II. PARTIES' PRIMARY ARGUMENTS

Defendant contends that there is "good cause" to set aside the default because Veriyani honestly (but mistakenly) believed that (1) "the EEOC matter was finished," thus obviating a need to respond to the Complaint, and (2) in responding to Plaintiff's email, he could not "request an extension of time in which to respond to the [C]omplaint." Mot. at 1–2; ECF 12-1 (affidavit of Veriyani).[5]

For its part, Plaintiff contends that Defendant has not "established sufficient good cause." Resp. at 3–14. First, Plaintiff argues that good cause is lacking because: (1) Veriyani's receipt of "actual copies of the summons and complaint" made his "failure to respond to the EEOC's

---

[5] Defendant also asserts that, under New Mexico Law, "[d]efault judgments are generally disfavored"; "[a]ny doubts about whether relief should be granted are resolved in favor of the defaulting defendant"; "in the absence of a showing of prejudice to the plaintiff, causes should be tried upon the merits"; and "Default is normally available only as a protection for a diligent party against a non-responsive party." Mot. at 2 (quotations and citations omitted).

complaint . . . willful" and "culpable"; (2) Veriyani "is not an unsophisticated litigant," as he "hired counsel . . . during the [EEOC] investigation . . . [and] this lawsuit" and "owns and operates other for-profit business in New Mexico"; (3) Veriyani has the "ability to communicate in English," as evidenced by, *inter alia*, his "lengthy interview with the EEOC . . . entirely in English" and his submission of "numerous records . . . in English";[6] and (4) "blaming [one's] attorney" is insufficient.  *Id.* at 3-8, 14.

In addition, Plaintiff argues that "setting aside the Clerk's entry of default will prejudice the EEOC's ability to obtain a judgment in this case in an expeditious manner"—including by requiring Plaintiff to unnecessarily "litigate what has already been admitted by [Defendant]."  *Id.* at 13–14.  Nevertheless, Plaintiff acknowledges that "there is little prejudice . . . when the defaulting party subsequently files a responsive pleading and participates in the lawsuit." *Id.* at 14 n.1.  Plaintiff thus asserts that "the culpability of the Defendant and the lack of any meritorious defense . . . far outweigh the level of prejudice."  *Id.* at 14.

In contending that Defendant has "failed to allege a meritorious defense," Plaintiff asserts that Defendant's proposed answer contains unsupported and insufficient "general denials."  *Id.* at 9–10, 13.  Plaintiff also argues that the proposed answer shows that "[Defendant] has *no defense* to EEOC's claims . . . of a hostile work environment" because Defendant "*admits as true* the alleged hostile remarks"—thus rendering it "*undisputed* that Mr. Veriyani created a [hostile] work

---

[6] *Cf.* ECF 12-1 at 3 (Veriyani attesting that, on May 19, 2022, he emailed an EEOC investigator, stating: "As letters you sent me. I do not understand them,they are very high class English.please make them translate to Farsi to I can understand and after I can make discussion what I want to do.legally I have rights to ask for this."); Resp. at ¶ 4 (noting that translation "was not a service the EEOC provided to companies" and that Veriyani was "advised he could have the documents translated at his own expense").

environment that was toxic because of sex, specifically for gay women." *Id.* at 10–13 (emphasis added).[7]

## III. APPLICALBE LEGAL STANDARDS

### A. Clerk's Entry of Default

The Federal Rules of Civil Procedure provide that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, . . . the clerk must enter the party's default." Fed. R. Civ. P. 55(a). "Entry of default by the clerk is a necessary prerequisite that must be performed before a district court is permitted to issue a default judgment." *Watkins v. Donnelly*, 551 Fed. App'x 953, 958 (10th Cir. 2014). "Default judgments are a harsh sanction," *In re Rains*, 946 F.2d 731, 732 (10th Cir. 1991), and are thus "not favored by courts." *Harvey v. United States*, 685 F.3d 939, 946 (10th Cir. 2012) (quotation). Thus, "there is a 'judicial preference for adjudication on the merits.'" *Neis v. Southwest Cardiology Assocs., P.A.*, No. CIV 99-379 MV/RLP, 2000 U.S. Dist. LEXIS 24257, at *9 (D.N.M. Jun. 21, 2000) (Vazquez, J.) (quoting *Johnson v. Dayton Elec. Mfg. Co.*, 140 F.3d 781, 784 (8th Cir. 1998)). Because defaults are "reserved for rare occasions, when doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party." *Id.* (quoting *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2nd Cir. 1993)).

### B. Setting Aside Entry of Default

Courts "may set aside [a clerk's] entry of default for good cause." Fed. R. Civ. P. 55(c). "[T]he good cause required by Fed. R. Civ. P. 55(c) for setting aside [a clerk's] entry of default poses a lesser standard for the defaulting party than the excusable neglect which must be shown

---

[7] *Cf.* ECF 12-2 at 2–3 (Defendant's proposed answer, stating that "Defendant would *deny* the allegations [regarding the alleged offensive remarks], to the extent he may not recall all the conversations he had with his employees. Any comments noted may have been general feelings or items that were discussed but were not directed to any individual as a demeaning or negative comment" (emphasis added)).

5

for relief from judgment under Fed. R. Civ. P. 60(b)." *Pinson v. Equifax Credit Info. Servs.*, 316 F. App'x 744, 750 (10th Cir. 2009) (quoting *Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp.*, 115 F.3d 767, 775 n.6 (10th Cir. 1997)). "In deciding whether to set aside [a clerk's] entry of default, courts may consider, among other things, [1] whether the default was willful [i.e., culpable], [2] whether setting it aside would prejudice the adversary, and [3] whether a meritorious defense is presented." *Watkins v. Donnelly*, 551 F. App'x 953, 958 (10th Cir. 2014) (quoting *Pinson*, 316 Fed. Appx at 750). Nevertheless, "[t]hese factors are not 'talismanic' and the court may consider other factors." *Hunt v. Ford Motor Co.*, 65 F.3d 178 (10th Cir. 1995) (Table), 1995 U.S. App. LEXIS 24463 (full-text format), at *9. Furthermore, "the court need not consider all the factors." *Id.*

        1. Culpable Conduct

"Generally a party's conduct will be considered culpable only if the party *defaulted willfully* or has *no excuse for the default*." *United States v. Timbers Pres.*, 999 F.2d 452, 454 (10th Cir. 1993) (emphases added). A "negligent" "reliance upon" incorrect information is not enough to establish the requisite culpability. *Watkins*, 551 F. App'x at 958; *see, e.g.*, *EEOC v. Bell Gas, Inc.*, No. CV 02-1090 WJ/DJS, 2003 WL 27385375, 2003 U.S. Dist. LEXIS 30645 at *4 (D.N.M. Feb. 13, 2003) ("finding that defendants' failure to file a timely answer was the result of an honest mistake"—"not the result of culpable conduct" or "a willful and flagrant disregard for the court," such as when a defendant "did not move to set aside the default until six months after [service]" (citation omitted)); *Beverly v. Martin*, No. 1:22-cv-00884-DHU-LF, 2023 WL 4532461, 2023 U.S. Dist. LEXIS 121528, at *10 (D.N.M. Jul. 13, 2023) (Urias, J.) ("Courts have consistently held that an unintentional or good faith mistake does not rise to the level of culpable conduct under Rule 55(c), particularly where a party takes prompt action to remedy its error" (quotation omitted)).

6

2. <u>Prejudice to Adversary</u>

"The fact that a plaintiff will have to litigate an action on the merits rather than proceed by default does not constitute prejudice." *Chavez v. Dennis*, No. CV 05-0186 MCA/ACT, 2006 WL 8444274, 2006 U.S. Dist. LEXIS 116661, at *7 (D.N.M. Apr. 6, 2006) (Armijo, J.) (quotation omitted) (concluding that "Plaintiff would not be prejudiced by being made to prove his case . . . in order to recover").

3. <u>Meritorious Defense</u>

A defaulting party "is not required to persuade the Court that [it] is likely to prevail on [its] defense." *Beverly*, 2023 U.S. Dist. LEXIS 121528, at *10. "Rather, the court examines the allegations contained in the moving papers to determine whether the movant's version of the factual circumstances surrounding the dispute, if true, would constitute a defense to the action." *In re Stone*, 588 F.2d 1316, 1319 (10th Cir. 1978); *see also Calderon v. Herrera*, No. CV 11-0482 WJ/GBW, 2012 WL 13013070, 2012 U.S. Dist. LEXIS 207331, at *14–15 (D.N.M. May 11, 2012) (Johnson, J.) (observing that "[i]t does not take much to establish the existence of a meritorious defense sufficient to set aside a default—only the alleging of sufficient facts that, if true, would constitute a defense").

**IV. DISCUSSION**

The Court concludes that there is "good cause" to set aside the clerk's entry of default. Fed. R. Civ. P. 55(c). As discussed below, this "lesser standard," *Pinson*, 316 F. App'x at 750, is satisfied because Defendant lacks culpability; Plaintiff will not be prejudiced by having to prove its case; and Defendant may have at least some defense to Plaintiff's claims.

7

### A. Defendant Lacks Culpability

Defendant should not be "considered culpable" because, pursuant to his affidavit, Veriyani has not "defaulted willfully" or without "excuse for the default." *Timbers Pres.*, 999 F.2d at 454. Although Veriyani chose not to take any action in response to the summons and Complaint, he attests that this lack of action was not based on a willful choice to default—but rather a mistaken belief that "the case was closed." ECF 12-1 at ¶ 7. Indeed, once Plaintiff's counsel emailed Veriyani on June 5, 2023, regarding the motion for default, Veriyani immediately responded (via email the following day) that he "*objected*" to any such default. Mot. at ¶ 3 (emphasis added). But because Veriyani unfortunately was operating without the aid of counsel—and was "not educated in the legal field"—he was unaware of other options (e.g., "request[ing] an extension of time"). *Id.* Nevertheless, Veriyani "contacted an acquaintance who is an attorney" to ask for assistance. ECF 12-1 at ¶ 7. (And fourteen days after the clerk's June 7, 2023, entry of default, this attorney entered his appearance and filed the instant Motion on Veriyani's behalf.)

Such actions by Veriyani are more in the realm of an "honest mistake," an "unintentional or good faith mistake," or a "negligent" reliance upon incorrect beliefs—as opposed to "a willful and flagrant disregard for the court." *Watkins*, 551 F. App'x at 958; *Bell Gas*, 2003 U.S. Dist. LEXIS 30645 at *4; *Beverly*, 2023 U.S. Dist. LEXIS 121528, at *10. Furthermore, Veriyani promptly tried to remedy these mistakes once he was notified of the pending default. As noted above, such "unintentional or good faith mistake does not rise to the level of culpable conduct under Rule 55(c), particularly where a party takes prompt action to remedy its error." *Id.* (quotation omitted)); *see also Neis*, 2000 U.S. Dist. LEXIS 24257, at *9 (Vazquez, J.) (finding that "default is too harsh a result for what was in the end a fourteen-day delay in filing an answer").

In sum, although Veriyani may speak reasonably fluent English, have other businesses, and have hired other attorneys in the past, his mistakes are not sufficiently culpable to justify the harsh, disfavored, and "rare" sanction of an entry of default, followed by an eventual default judgment. *Neis*, 2000 U.S. Dist. LEXIS 24257, at *9.

### B. Plaintiff Will Not Be Prejudiced

The Court agrees that "[t]he fact that a plaintiff will have to litigate an action on the merits rather than proceed by default does not constitute prejudice." *Chavez*, 2006 U.S. Dist. LEXIS 116661, at *7. Indeed, Plaintiff even acknowledges that "there is little prejudice . . . when the defaulting party subsequently files a responsive pleading and participates in the lawsuit." Resp. at 14 n.1 (citation omitted). Furthermore, Plaintiff has identified no meaningful prejudice (aside from essentially noting that further litigation will take more time). *See* Resp. at 13–14. The Court therefore concludes that "Plaintiff would not be prejudiced by being made to prove his case." *Chavez*, 2006 U.S. Dist. LEXIS 116661, at *7.

### C. Defendant May Have Defenses

As with the other two optional factors discussed above, the Court "need not consider" the "meritorious defense" factor—and the Court "may consider other factors." *Hunt*, 1995 U.S. App. LEXIS 24463, at *9; *see, e.g.*, *Beverly*, 2023 U.S. Dist. LEXIS 121528, at *11 (vacating the clerk's entry of default upon finding that—"[a]lthough [the defendant] ha[d] not alleged facts sufficient to establish meritorious defenses"—the defendant "was not culpable and setting aside the default would not prejudice the Plaintiff"). The Court nevertheless briefly addresses this factor. In doing so, the Court notes that Defendant need not show that it is likely to prevail. *Id.* at *10. Instead, the Court need only consider whether Defendant has alleged "sufficient facts that, if true, would constitute a defense." *Calderon*, 2012 U.S. Dist. LEXIS 207331, at *14–15.

The Court observes that Defendant's proposed answer *denies* that he made the offending statements. *See* ECF 12-2 at 2–3 ("Defendant would deny the allegations [regarding the offending statements], to the extent he may not recall all the conversations he had with his employees.") Such a "mere denial," *Beverly*, 2023 U.S. Dist. LEXIS 121528, at *11, might not inspire unshakable confidence in Defendant's assertions that Veriyani never made these statements. Similarly, this denial does not establish that Veriyani does not remember making such comments or that the comments would only have been mere expressions of "general feelings" that were neither demeaning nor created a hostile environment. ECF 12-2 at 2–3. Indeed, the denial does not provide significant additional facts or explain how Veriyani's lack of making these statements (or the context of these statements, if they were made) in relieves him of liability. Nevertheless—as uninspiring and un-insightful as Defendant's mere denial may be—it is a denial nonetheless. Furthermore, if it is indeed true that—as represented in Defendant's proposed answer—Veriyani never made such statements, such a factual scenario may "constitute a defense." *Calderon*, 2012 U.S. Dist. LEXIS 207331, at *14–15.[8]

In sum, although Defendant has not shown that it is likely to prevail, it has established that it denies Plaintiff's version of the facts—particularly those facts that are material to the outcome of this case. And considering Defendant's lack of culpability and Plaintiff's lack of prejudice, such factual disputes are best resolved—not through the "harsh sanction" of default—but rather through an "adjudication on the merits." *Neis*, 2000 U.S. Dist. LEXIS 24257, at *9. The Court will therefore recommend vacating the clerk's entry of default.[9]

---

[8] The Court also observes that Plaintiff's Response only addresses Defendant's purported lack of defenses with respect to the first count (Discrimination Based on Sex, 42 U.S.C. § 2000e-2(a)), but it does not address the second count (Record-Keeping Violation, § 2000e-8(c)). *See* Resp. at 9–13.

[9] Because the Court recommends vacating the clerk's entry of default—and because the clerk's entry of default is "a necessary prerequisite" for a default judgment, *Watkins*, 551 Fed. App'x at 958—the Court will also recommend denying Plaintiff's Motion for Default Judgment [ECF 9] as moot.

## V.  CONCLUSION

**IT IS THEREFORE RECOMMENDED** that Defendant's Motion to Set Aside Default [ECF 12] be **GRANTED** and that the Clerk's Entry of Default [ECF 10] be **VACATED**.

**IT IS FURTHER RECOMMENDED** that Plaintiff's Motion for Default Judgment [ECF 9] be **DENIED AS MOOT**.

**IT IS FINALLY RECOMMENDED** that Defendant be permitted to file its proposed Answer to Complaint [ECF 12-2] or other responsive pleading(s) no later than **seven (7) days** after the Court's order vacating the clerk's entry of default.

**SO RECOMMENDED.**

_____
THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1)(c). Any request for an extension must be filed in writing no later than seven days from the date of this filing. **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed**.

11